IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAN P. MATTHEWS, | ] |
| | ] |
|     Plaintiff, | ] |
| | ] |
| v. | ]   CV-04-BE-2793-S |
| | ] |
| ITC DELTACOM, et al., | ] |
| | ] |
|     Defendants. | ] |
| | ] |

**MEMORANDUM OPINION**

**I. INTRODUCTION AND FACTUAL BACKGROUND**

    This case is currently before the court on a motion for summary judgment (doc. # 20), supporting brief (doc. # 21), and supporting evidentiary material (doc. # 22) filed by defendants ITC DeltaCom and branch manager, Herbert Keefer.  Plaintiff Jan Matthews filed an objection to the motion for summary judgment (doc. # 24) and subsequently filed evidentiary submissions in opposition to the motion for summary judgment (doc. # 24).[1]

    In response to evidentiary submissions not originally filed with the plaintiff's objection to the motion for summary judgment, the defendants filed a motion to strike the affidavits of plaintiff Jan Matthews and Tia Maddox (doc. # 27).  The defendants also filed a motion to dismiss the entire case as a sanction for the plaintiff's failure to comply with the Court's June 8, 2005 order (doc. # 26).

---

[1] The docket sheet in this case indicates that these evidentiary submissions included the plaintiff's affidavit and the affidavit of Tia Maddox.

1

Having reviewed the briefs and evidence submitted by both parties, the court concludes that the defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part. The court specifically finds that the motion for summary judgment is due to be (1) GRANTED on all the plaintiff's Title VII and ADEA claims against Defendant Keefer in his individual capacity; (2) GRANTED on the plaintiff's hostile work environment claim against ITC DeltaCom; (3) DENIED on the plaintiff's claim that she was terminated in violation of Title VII and the ADEA; (4) GRANTED on the plaintiff's outrage claim; and (5) DENIED on the plaintiff's fraud claim. In accordance with the matters discussed at the October 6, 2005 pretrial conference, the court RESERVES ruling on the plaintiff's breach of contract claim.

After a thorough review of the motion to strike and the motion to dismiss as a sanction for failing to respond to the court's discovery orders, the court concludes that the motion for dismissal as a sanction for failure to comply with the court's discovery order is due to be DENIED. However, in accordance with the matters discussed at the pretrial conference, the defendants will be permitted to re-depose the plaintiff on the issues raised by the plaintiff's untimely response to the defendants' second interrogatories. Similarly, the motion to strike the affidavits of Tia Maddox and Jan Matthews are DENIED. The court did not rely on these affidavits, but on the deposition excerpts submitted by the parties.

This case arises from plaintiff Jan Mathews' employment with ITC DeltaCom. Matthews alleges that her October 2003 termination was based on her gender, in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq., (Title VII) and based on her age, in violation of The Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et. seq*. The plaintiff also asserts various violations of Alabama law.

The plaintiff was initially hired by ITC DeltaCom in December 1999 as a Major Account Executive, level one MAE-I in its Birmingham, Alabama office. The employee handbook clearly indicates that employment with ITC DeltaCom is "at will." The employee handbook also contains policies against harassment and discrimination. Plaintiff was aware of the above-referenced policies and received a copy of the employee handbook. In her capacity as a MAE-1, Matthews handled larger customer accounts, received a base salary plus commissions, and a four hundred dollar per month car allowance.

In December 2001, Mathews was demoted from her position as a MAE-1 and given the title of Account Executive III "AE-III." Plaintiff received no explanation for this action other than an alleged lack of sales performance and an inability to meet sales goals. As an AE-III, Matthews received a lower salary and commissions but retained her four hundred dollar per month car allowance. The plaintiff disputes any performance deficiencies and alleges that at least two younger male employees received higher base salaries but were not demoted despite deficient sales performances. According to the plaintiff, Kevin Roberts, a similarly-situated male, was not demoted despite his poor sales performances. Matthews complained about her demotion to the defendant's human resources department to no avail.

At various times in beginning in 2000, the plaintiff claims that she was subjected to general workplace harassment because of her gender and age. In 2000, Matthews complained that a male employee had accessed her computer and read her emails. Plaintiff complained to the human resources department, but no action was taken. In June 2002, Matthews claims that she was the subject of an office meeting organized by a supervisory employee that was presumably held to discuss general employee grievances. However, plaintiff claims that the meeting quickly

3

devolved into a "Jan-bashing" session. Matthews also identified other incidents that created a hostile work environment.

During this same time period, plaintiff alleges that a male employee made fun of her while she was not present. On another occasion in October 2002, a female co-worker accused Matthews of unpleasant conduct and sabotage. Plaintiff attributes all of the above-referenced conduct to her not being a part of the "good old boy" network that controlled the work environment at ITC DeltaCom's Birmingham office.

Matthews also claims that she was subjected to disparate treatment because of her gender and age at various times in 2000, 2001, and 2002. In October 2002, plaintiff alleges that several accounts were taken away from her and given to other similarly-situated male employees. Plaintiff was also placed on a Performance Improvement Plan (PIP) in May 2001, January 2002, and July 2002, when she fell short of her monthly quota. However, Matthews alleges that similarly-situated younger males were not placed on a PIP for similar sales performances. Lastly, Matthews alleges to have gained personal knowledge sometime in 2000 or 2001 that male employees received higher salaries.

Plaintiff became an Account Executive - Residual "AE - Residual" more than two years later in July of 2003. Matthews described this position as a lateral move, instead of a promotion. According to the plaintiff, she was not given the increased customer base that would typically accompany this type of promotion.

Approximately one month later on August 1, 2003, Matthews was promoted to the position of Major Account Executive - Residual "MAE-Residual." Defendant Herbert Keefer was the plaintiff's supervisor when she received this promotion. The commission rate for MAE -

Residual sales employees was higher than that for AE -Residual sales employees.  Both AE - Residual sales employees and MAE - Residual sales employees were required to meet a monthly quota.

The events that eventually led to the plaintiff's termination occurred in October 2003. Matthews was the account executive assigned to the Piqua Technologies account.  In October, 2003, Piqua was expanding its operations to Jasper, Alabama.  The plaintiff's contact person for the Piqua account was Ralph Marratta.  Mathews met with Marratta, who executed a service agreement and related documentation on behalf of Piqua Technologies.

When plaintiff brought the signed contract back to the office on a Friday afternoon, receptionist, Janice Gallagher, informed her that the sales agreement contained incorrect telephone numbers and that new numbers would need to be assigned.  Gallagher told Matthews that she would need Marratta or another authorized Piqua employee to initial and date the changes.

The plaintiff attempted to call Marratta, but he was unavailable.  When she was unable to reach other company representatives, Mathews placed Mr. Marratta's initials on the paperwork authorizing the change in telephone number.  On the following Monday, Mathews received an email from Gallagher telling her that the customer's initials were unnecessary.  Plaintiff subsequently marked through the initials when she was unable to obtain the signature of an authorized Piqua employee.  Matthews crossed out the initials before submitting the service agreement and related documents for processing.

On Wednesday, October 29, 2003, Keefer, after meeting with Matthews, decided that the plaintiff had violated ITC DeltaCom's policies and procedures by what he characterized as

5

placing a customer's initials on a contract document without prior customer authorization. Keefer made the decision to terminate Matthews. Plaintiff filed a charge of sex and gender discrimination with the EEOC on December 8, 2003. Plaintiff filed suit against the defendants on August 17, 2004 in the Circuit Court of Jefferson County, Alabama. The case was removed to this court on September 23, 2004.

## II. STANDARD OF REVIEW AND LEGAL FINDINGS

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases where no genuine issues of material facts are present. Fed. R. Civ. P. 56. Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52. In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir.1986). Furthermore, mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir. 1984).

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes as follows:

### A. Title VII and ADEA Claims against Defendant Keefer

In their motion, the defendants contend that they are entitled to summary judgment on the plaintiff's claims against Keefer in his individual capacity because Title VII and the ADEA do

not apply to individuals who are not employers. Plaintiff agrees with this general proposition but argues that Keefer was Matthews' *de facto* "employer" because he "is obviously the person that represents ITC DeltaCom in the Birmingham area and is an agent for them."[2] In support of her argument, plaintiff cites *Wallace v. City of Montgomery*, 956 F. Supp. 965 (M.D. Ala. 1996) and *Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995).

The above-referenced authorities are not applicable to this case because the plaintiffs in those cases asserted causes of action under 42 U.S.C. § 1983 that permits a plaintiff to sue supervisors for liability in their individual capacities. *See Mercado v. City of Orlando,* 407 F.3d 1152, 1158 (11th Cir. 2005) (setting forth the standards for supervisory liability under 42 U.S.C. § 1983). Unlike claims asserted under 42 U.S.C. § 1983, Title VII prevents "employers" from discriminating on the basis of race, color, religion, sex or national origin. 42 U.S.C. 2000e-2(a)(1) (1988). Title VII defines an employer as "a person engaged in an industry affecting commerce . . . and any agent of such person." *Id.* at 2000e(b).

Likewise, the ADEA defines an employer as a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . The term also means (1) any agent of such a person . . . " 29 U.S.C. § 630(b).

Although the expansive definition of employer might be interpreted to impose liability on individual employees as "agents," the Eleventh Circuit holds that agents of employers who are alleged to have violated Title VII or the ADEA only trigger an action against the employer, and not an action against its individual agent/employee. *See Busby v. City of Orlando,* 931 F.2d 764,

---

[2]*See* doc. # 24, p. 13-14.

772 (11th Cir. 1991) (holding that the relief granted under Title VII is against the employer and not against the individuals whose actions constitute a violation); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557-1559 (11th Cir. 1987); *Smith v. Lomax,* 45 F.3d 402, 403 n. 4 (11th Cir. 1995) (holding that individuals "cannot be held liable under the ADEA or Title VII."); *Malone v. Chambers County Bd. of Com'rs*, 875 F.Supp. 773, 784 -785 (M.D. Ala. 1994).

Based on the above-referenced authorities, the court concludes that the motion for summary judgment is due to be GRANTED on the plaintiff's Title VII and ADEA claims against defendant Herbert Keefer.

### B. Hostile Work Environment Claim

ITC Delta Com also argues that the court should dismiss the plaintiff's claim that she was subjected to a hostile work environment in violation Title VII and the ADEA. According to the defendant, the plaintiff's complaints of disparate treatment and hostile work environment are time-barred because she did not file a charge of discrimination with the EEOC until December 8, 2003, more than 180-days from the incidents forming the basis of her hostile work environment claim. Consequently, the defendant argues that her October 2003 termination claim is the only claim not barred by the statute of limitations.

The plaintiff objects to this characterization, arguing that the incidents of age and gender-based disparate treatment and hostile work environment indicate a "pattern and practice" of discrimination, that the pre-filing conduct constitutes a continuing violation, or in the alternative, that pre-filing conduct should be considered by the court as relevant background information regarding the defendant's discriminatory practices.[3]

---

[3]*See* doc. # 24, p. 14.

8

Under both the Title VII and ADEA, a plaintiff must file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before filing suit in federal court. *See Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (Title VII); *Hill v. Georgia Power Co.*, 786 F.2d 1071, 1076 (11th Cir. 1986) (ADEA). The charge must be in writing, made under oath or affirmation, and filed within 180 days of the allegedly unlawful employment action. 42 U.S.C. § 2000e-5(b), 42 U.S.C. § 2000e-5(e)(1). Thus, pursuant to the 180-day rule, the protection of Title VII only applies to claims of employment discrimination arising within 180 days prior to the filing of an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). *See also, Morrow v. Auburn Univ. at Montgomery, Al.*, 973 F. Supp. 1392, 1400 (M.D. Ala. 1997) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). Once the defendant raises the statute of limitations defense, the plaintiff bears the burden of proving that any untimely claim is excused by an equitable exception, such as waiver or estoppel. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

In *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101 (2002), the Supreme Court considered claims of retaliation and hostile work environment brought under Title VII against the railroad by a former employee. The *Morgan* Court issued a twofold ruling. First, it held that "discrete discriminatory acts [such as termination, failure to promote, denial of transfer, or refusal to hire] are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan,* 536 U.S. at 112. Second, and more important for this case, the Court held that a hostile work environment claim should be reviewed in its entirety, so long as one of the events comprising it fell within the statute of limitations. Put simply, if the smallest portion of that "practice" occurred within the limitations time period, then the court

should consider the claim as a whole. *See Morgan*, 536 U.S. at 105; *Shields v. Fort James Corp.*, 305 F.3d 1280, 1281-1282 (11th Cir. 2002) (holding that a plaintiff can satisfy the 180-day statute of limitations for reporting harassment to the EEOC by demonstrating *one* act within the applicable limitations period).

The plaintiff's first EEOC charge alleging sexual harassment was filed on December 8, 2003, which is more than 180 days from some of the incidents forming the basis of Matthews' hostile work environment claims. For example, Matthews argues that, beginning in 2000, she was subjected to gender and age-based harassment from co-workers and supervisors and subjected to disparate treatment based on age and gender.

However, by her own admission, **none** of the above-referenced incidents occurred within 180 days of the plaintiff's December 8, 2003 EEOC filing. In fact, the only employment actions that occurred within the 180-day filing period were discrete employment actions, two of which Matthews does not challenge as discriminatory (the July 2003 lateral transfer to AE-III that the plaintiff alleges was designed to placate her and her August 1, 2003 promotion to Major Account Executive), and the other (her October 29, 2003 termination) that she asserts as an independent violation of Title VII and the ADEA.

Plaintiff cites several cases for the general proposition that the 180-day period can be tolled by equitable doctrines such as tolling and estoppel. However, her brief merely asserts the applicability of these equitable doctrines in conclusory fashion and does not demonstrate **how** they would apply given the facts of this case. *See Baldwin County Welcome Center*, 466 U.S. at 152 (holding that "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by the courts out of vague sympathy for particular

litigants).

The court is not an advocate for either party and is not required to distill every potential argument that could be made based upon the materials before it on summary judgment. *See Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Instead, the onus rests on the party opposing the motion for summary judgment to submit affirmative evidence demonstrating genuine issues of material fact on an essential element of its claim. *Celotex,* 477 U.S. at 322.

Because the plaintiff has not demonstrated that an act contributing to the hostile work environment occurred within the statutory time period and because she has not demonstrated an entitlement to the judicially-recognized equitable exceptions, such as waiver or estoppel, the court concludes that the plaintiff's hostile work environment claims are barred by the statute of limitations.

Consequently, the court concludes that ITC DeltaCom's motion for summary judgment is due to be GRANTED on the plaintiff's hostile work environment claims under Title VII and the ADEA.

### C. Discriminatory Termination Claim

ITC DeltaCom next asks the court to grant its motion for summary judgment on the plaintiff's claim that her termination violated Title VII and the ADEA. According to ITC DeltaCom, Matthews cannot establish a *prima facie* case under either statute because she has not created a genuine issue of material fact on the issue of whether she was treated less favorably than similarly-situated males. *Rebar v. Marsh*, 959 F.2d 216, 219 n. 5 (11th Cir. 1992) (Title VII

principles regarding *prima facie* standard apply to ADEA actions). Given the plaintiff's inability to identify a younger male comparator who was not terminated for violating the same workplace rule, the defendant argues that it is entitled to summary judgment.

The court finds that Matthews has presented sufficient evidence, at least for purposes of this motion for summary judgment, that defendant Herbert Keefer is a similarly-situated comparator.[4] Evidence of the differential application of workplace rules or policies raises the requisite inference of discrimination to support a disparate treatment claim. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir. 1984). To prove that employees are "similarly situated," the plaintiff must show that the comparator employees are "involved in or accused of the same or similar conduct," yet the relevant workplace rules are applied in a differential, more favorable manner. *Anderson v. WBMG-42*, 253 F.3d 561, 564 (11th Cir. 2001).

In this case, the plaintiff alleges that Keefer altered a sales agreement by adding installation charges to one of the accounts that she serviced.[5] Matthews learned about the alleged alteration of the service agreement when Keefer called her to obtain the amount of the installation charge.[6] According to Matthews, Keefer only obtained the customer's initials to the service agreement after the plaintiff filed this lawsuit. Keefer was not terminated for this conduct and is still employed as the Branch Manager at the defendant's Birmingham office.

The above-referenced disparity is particularly troubling given Keefer's affidavit. According to Keefer, ITC DeltaCom's standard procedure requires that changes to service

---

[4] The record does not indicate Keefer's age. However, the defendants do not dispute that Keefer is younger than the plaintiff.

[5] *See* Pl's Dep., p. 128-130.

[6] *Id.*, at p. 130.

agreements be authorized by the customer.[7]  The customer's approval of the changes is indicated by the customer signing or initialing beside the alteration to the document.[8]  Furthermore, a reasonable reading of Keefer's affidavit indicates that alteration of a sales agreement is serious employee misconduct that typically results in termination.

Based on the undisputed evidence that Keefer and Matthews received differential treatment in the manner in which the company meted discipline regarding the alteration of sales contracts, the court concludes that Keefer and the plaintiff are similarly situated for purposes of establishing a *prima facie* case of discriminatory termination in violation of Title VII and the ADEA.

The court also concludes that Matthews has presented sufficient evidence of pretext to survive a motion for summary judgment.  A plaintiff can demonstrate pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence."  *Hamilton v. Montgomery County Bd. of Educ.*, 122 F. Supp. 1273, 1281 (M.D. Ala. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)).

The plaintiff may utilize comparator evidence of the differential application of the work-place rules to establish pretext.  *See Walker v. Mortham*, 158 F.3d 1177, 1184 n. 10 (11th Cir. 1998); *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985).  In this case, the inconsistent application of workplace rules regarding alteration of service agreements and other customer documents casts doubt on the defendant's purportedly age and gender-neutral explanation for the plaintiff's discharge.  Specifically, a jury could reasonable conclude that ITC DeltaCom's assertion

---

[7]*See* doc. # 22, *Ex*. B.

[8]*Id*.

that the plaintiff was fired for altering documents, a practice that the Branch Manager also allegedly participated in, is not worthy of credence, and thus, reject its gender and age-related reasons for the plaintiff's termination.

Based on the foregoing, the court concludes that defendant ITC DeltaCom's motion for summary judgment is due to be DENIED on the plaintiff's claim that she was terminated in violation of Title VII and the ADEA.

**D. Outrage Claim**

The plaintiff alleges that the record is replete with instances where she was subjected to a hostile work environment based on her gender and age.  According to the plaintiff, this harassment is based on her becoming the brunt of co-employee jokes and verbally attacked at staff meetings, being placed on periodic Performance Improvement Plans, having sales managers access her computer and read her emails, and being the victim of age and gender-based disparate treatment.  Matthews alleges that such conduct constitutes the tort of outrage.

The tort of outrage requires extreme and outrageous conduct by a person who intentionally or recklessly causes severe emotional distress to another.  *Nipper v. Variety Wholesalers, Inc.*, 638 So. 2d 778, 780-781 (Ala. 1994) (citing *American Road Service Co. v. Inmon,* 394 So. 2d 361 (Ala. 1980)).  The plaintiff must produce sufficient evidence to show that the defendants' conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon,* 394 So. 2d at 365; *see also*, *Fitch v. Voit,* 624 So. 2d 542 (Ala. 1993).

The Alabama Supreme Court has declined to impose liability for outrage except in the most egregious cases and has recognized the tort of outrage in three areas: (1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment. *See Thomas v. BSE Indus. Contractors, Inc.,* 624 So. 2d 1041 (Ala.1993).

While Matthews' allegations of age and gender-based harassment and disparate treatment can certainly be described as offensive, these incidents do not rise to the level of egregious conduct to constitute the tort of outrage. *Cf., Turner v. Hayes*, 719 So. 2d 1184, 1186-1187 (Ala. Civ. App. 1997) (holding that incidents of touching, including poking female employees under their armpits near their breasts, putting hands on a female employee's waist, combined with comments and attempts to look up the employee's skirt did not establish outrageous conduct), *rev'd on other grounds by Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190 (Ala. 1998); *Saville v. Houston County Healthcare Auth.*, 852 F.Supp. 1512 (M.D. Ala.1994) (granting summary judgment on outrageous conduct claim where incidents including poking a female employee in the rib cage and touching or grabbing the employee's buttocks).

Based on the above-referenced authorities, the court concludes that jury could not reasonably conclude that the defendants' conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. *See Inmon*, 394 So. 2d at 365.  Consequently, the defendants' motion for summary judgment on the plaintiff's outrage claim is due to be GRANTED.

**E. Fraud Claim**

Mathews alleges that ITC DeltaCom defrauded her by deducting money from her salary and then claiming that it inadvertently overpaid her travel allowance. Plaintiff alleges that, despite her demotion to AE-III in December 2001, she was nevertheless permitted to retain her four hundred dollar per month travel allowance. Plaintiff also alleges that ITC DeltaCom completely misrepresented (i.e., lied) about the reasons for her termination.

Under Alabama law, fraud requires (1) a misrepresentation of material fact; (2) made willfully to deceive, recklessly without knowledge or mistakenly; (3) reasonable reliance; and (4) proximately caused damages. *Patten v. Alfa Mut. Ins. Co.*, 670 So. 2d 854 (Ala. 1995).

In their motion for summary judgment, the defendants argue that plaintiff cannot establish a misrepresentation or a willful intent to deceive by Keefer or any other ITC DeltaCom employee. According to the defendants, Matthews admits the alleged misconduct underlying her termination.

Given the standard of review that requires the court to accept the truth of any material, disputed facts, the court concludes that the plaintiff has created a genuine issue of fact on the issue of whether ITC DeltaCom misrepresented the amount that the plaintiff would receive as a monthly travel allowance and whether the circumstances of Matthews' termination were fraudulent or pretextual. Consequently, the defendants' motion for summary judgment is due to be DENIED on the plaintiff's fraud claims.

### III. CONCLUSION

Based on the foregoing analysis, the court concludes that the motion for summary

judgment is due to be GRANTED in part and DENIED in part. A separate, final order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 7th day of October, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE